## LAWHON v. UNITED STATES.

### No. 1364.

Circuit Court of Appeals, Tenth Circuit.
April 7, 1936.

Benjamin E. Cook, of Ponca City, Okl., for appellant.

Randolph C. Shaw, Sp. Asst. to Atty. Gen. (Will G. Beardslee, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., Thomas E. Walsh, Atty., Department of Justice, of Washington, D. C., and William C. Lewis, U. S. Atty., of Oklahoma City, Okl., on the brief), for the United States.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

This appeal challenges the correctness of the trial court's action in directing a verdict for the defendant in an action on a war risk insurance policy.

Plaintiff was in the service 54 days; he was discharged October 28, 1918, and paid no premiums on his policy thereafter. In 1931 he was awarded compensation from the date of his discharge. Under World War Veterans' Act of 1924, § 305, as amended, 38 U.S.C.A. § 516, as construed in United States v. Hendrickson (C. C.A.10) 53 F.(2d) 797, the due and unpaid compensation was applied to the premiums on lapsed term policies. The record does not disclose the amount of compensation awarded in dollars, nor the amount of the premiums on the policy. In any event, all term insurance expired on July 2, 1927. 38 U.S.C.A. § 512. Plaintiff pleads total and permanent disability in the alternative, that is, if not found to be so disabled in 1918, he was so in 1927. Believing there to be no substantial evidence of such disability upon either date, it is unnecessary to determine whether we can judicially notice the amounts of his compensation and his premiums to determine how much insurance was kept in force by his unpaid compensation.

Plaintiff's service was in a camp on this side of the water. A few days after enlistment he was inoculated and vaccinated and there was a sharp, but not unusual, reaction. A few days later, while cutting wood, he was stricken suddenly with some ailment that baffled the doctors. The army was rife with flu and he was in the hospital five weeks with little medical attention and then discharged for disability.

Since discharged he has been partially disabled; for long periods he has held down remunerative jobs, and for other periods he has been unable to work. His own medical evidence discloses an hereditary emotional instability and neurasthenia. Doctor Alvarez, of the Mayo Clinic, examined him in 1924 and pronounced him constitutionally inadequate and afflicted with a nervous or soldier's heart. The medical evidence leaves in the realm of speculation the question of his total disability, for the nature of his affliction is such that he may for long periods lead an apparently normal life and then some trivial event which would pass unnoticed by the ordinary person will cause his heart to act up and force him to rest and quiet for a time.

The doubt left by the medical evidence is resolved by the cold facts of his work record throughout the years. He had schooling through the sixth grade and was

a laborer before the war. Since the war, aside from some other sporadic work, appellant was regularly employed as follows:

Empire Refining Company, December, 1918, to October, 1919.

Marland Refining Company, March 9, 1920, to April 9, 1923.

E. W. Marland, March, 1928, to January, 1931.

His wages with the Marland Company ran from $3.60 to $5.50 per day; for E. W. Marland, his wage was 37½ cents per hour.. While he testified he was off duty frequently on account of illness, yet he drew his wages with substantial regularity. For the last stretch of 34 months, he averaged 38.74 hours work a week. Approximately 12 years elapsed between the time of his discharge and his claim for insurance. He was steadily employed for six years and nine months of that period. There is proof, and it is a matter of common knowledge in Oklahoma, that Governor Marland was a lenient employer. But it is not conceivable that he or his superintendents would keep a totally disabled man on his payrolls for years at a stretch, for it would be inhumane to require a totally disabled man to even try to work 39 hours a week; nor is it conceivable that even a lenient employer would permit an employee working by the hour to lay off for long periods at full pay. The work he did was not injurious to his health.

No useful purpose will be served by comparing the facts in this case with facts in others. Each stands on its own bottom, and some may have been wrongly decided. Nothing is better settled than that an insured must suffer total disability while his policy is in force before there may be a recovery. Nothing can be more certain than that appellant was not totally disabled during the years he was following a gainful employment. A verdict that one is totally disabled while gainfully employed with substantial continuity could not stand. There is also a strong evidentiary presumption that one who was totally and permanently disabled in 1918 would not postpone filing a claim for his insurance until 1931.

■ Permission was granted to file the record in typewritten form. That privilege was abused, and our work materially increased, by counsel failing to reduce the .testimony to narrative form. Only the preliminary questions of each witness are abstracted; the rest is copied from the transcript. This bill of exceptions should not have been tendered the trial court, nor approved -when tendered. This court has repeatedly directed attention to the rule requiring reduction of testimony to a narrative, and has occasionally stricken a bill of exceptions not so condensed from the record. We have labored through this one because of our sympathy for this unfortunate man. It must not happen again.

The judgment is affirmed.